MARK GOLDROSEN, CBN 101731
Attorney at Law
255 Kansas Street, Suite 340
San Francisco, California 94103
TEL: (415) 565-9600
FAX: (415) 565-9601
markgoldro@aol.com

Attorney for Defendant
NEITAN ERAZO RAMOS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO VENUE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 21-cr-00415-002 CRB |
| | ) | |
| Plaintiff, | ) | |
| | ) | DEFENDANT ERAZO RAMOS' |
| | ) | SENTENCING MEMORANDUM |
| vs. | ) | |
| | ) | |
| NEITAN ERAZO RAMOS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | DATE: January 4, 2022 |
| | ) | TIME: 10:00 a.m. |
| _____ | ) | DEPT: Hon. Charles R. Breyer |

Defendant NEITAN ERAZO RAMOS, remorsefully appears before this honorable

Court for entry of judgment and sentencing. The defense respectfully requests that the Court

sentence Mr. Erazo Ramos to time served, followed by four years of supervised release with

appropriate conditions. As of today, Mr. Erazo Ramos has served almost 15 months in

federal custody, and he is likely to be deported upon release.

## I.    MR. ERAZO RAMOS' BACKGROUND

Mr. Erazo Ramos was 24-years old at the time of his offense. Although he had been

arrested before for drug-related offenses, he had never been convicted of any crimes or

incarcerated for more than a few days. Mr. Erazo Ramos is very remorseful for his criminal

conduct. In his statement to the probation officer, he wrote: "I . . . accept responsibility for

ERAZO RAMOS SENTENCING MEMORANDUM, CASE NO. 21cr0415-002 CRB

being involved in the sales of methamphetamine. I am sorry for my criminal conduct. I feel badly about my poor judgment." He further explained that he "could not find a good-paying job and [he] needed to provide financial support for [himself] and [his] family in Honduras." Mr. Erazo Ramos helped to pay for many of his family's expenses in Honduras, including school for his siblings and food. Presentence Report [hereafter "PSR"] at ¶ 21.

Mr. Erazo Ramos was born to Anibal Ramos and Lesli Velasquez Erazo in El Pedernal, a small Honduran town. *Id*. at ¶ 53. His childhood was marred by exposure to significant traumas, most significantly extreme poverty. Mr. Erazo Ramos, his parents, and his brothers lived in a small one-bedroom adobe style house with a thatch roof. The home did not have water, electricity, or indoor plumbing. Candles were used for lighting. Mr. Erazo Ramos' parents used the one bedroom and the children shared the remaining living area. The family's primary meals were beans and tortillas, and there was often not enough food to prevent hunger. *Id*. at ¶ 54. Children, like Mr. Erazo Ramos, who experience extreme poverty develop chronic stress, which can impair their social development.

Poverty and hunger were not the only traumas faced by Mr. Erazo Ramos in childhood. Another source of stress was threats to physical safety. Mr. Erazo Ramos' parents disciplined him and his siblings by whipping them with a belt several times a month. *Id*. at ¶ 55. In addition, there was a significant amount of violence in El Pedernal. Mr. Erazo Ramos frequently heard the sound of gunfire and felt unsafe at home. *Id*. at ¶ 58.

Mr. Erazo-Ramos attended school, but only until the seventh grade. He left before graduating because school was too expensive and he had to work in the fields to help support his family. *Id*. at ¶ 68. Agriculture work was hard and not very lucrative. Mr. Erazo Ramos hoped that by coming to the United States he could earn more money to better support his family. At about age 20, Mr. Erazo Ramos left Honduras for the United States. He first lived in Los Angeles and then came to San Francisco. *Id*. at ¶ 59. Initially, Mr. Erazo Ramos found work as a dishwasher in various restaurants. His pay, however, was very low. It was difficult for Mr. Erazo Ramos to both support himself and his family in Honduras with restaurant

work. His lack of education and illegal immigration status prevented him from finding a higher paying job. *Id*. at ¶ 30.

In about 2018, Mr. Erazo Ramos concluded, albeit wrongly, that he had no choice other than to sell drugs to increase his income. San Francisco police arrested him on many occasions, but only once were charges filed in court and that case was eventually dismissed. *Id*. at ¶¶ 39-51. While Mr. Erazo Ramos readily acknowledges he is to blame for making bad decisions, the lack of prosecution gave him the false belief he could continue dealing drugs without suffering any consequences. Eventually, an arrest in Oakland on February 10, 2021 resulted in a criminal case being filed in Alameda County Superior Court. *Id*. at ¶ 37. After Mr. Erazo Ramos was released from custody, he unfortunately went back to what had produced income for him, drug dealing. On October 14, 2021, ATF agents arrested Mr. Erazo Ramos in this case and he has remained in custody ever since. Because of his current incarceration, he was not present for the Alameda County case on March 2, 2022 and a bench warrant was issued. *Id*.

Mr. Erazo Ramos has now been in custody for almost 15 months, much longer than the few days he previously spent in jail in connection with state court cases. He has attempted to spend his custodial time productively by volunteering to work in the Santa Rita kitchen. Because he does not have legal immigration status, he likely will be deported to Honduras upon his release from custody. In Honduras, Mr. Erazo Ramos plans to reunite with his family and to again work in the agriculture fields. He also hopes to own animals. *Id*. at ¶ 61.

## II.   PLEA AGREEMENT

Mr. Erazo Ramos and the government entered into a written plea agreement pursuant to Rules 11(c)(1)(A) and 11(c)(1)(C) of the Federal Rules of Criminal Procedure. Mr. Erazo Ramos pled guilty to Count One of the Indictment, charging him with Conspiracy to Distribute 50 Grams or More of a Substance Containing a Detectable Amount of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). The plea agreement calculates Mr. Erazo Ramos' adjusted offense level under the Sentencing

1  Guidelines as either 21 or 23, depending upon whether he is entitled to a minor role

2  adjustment.[1] The plea agreement also contemplates a further two-level variance if Mr. Erazo

3  Ramos satisfies the safety valve requirements under U.S.S.G. § 5C1.2(a)(2)-(5). Plea

4  Agreement at ¶ 7. The parties did not reach an agreement regarding Mr. Erazo Ramos'

5  Criminal History Category. The government promised to recommend a sentence within the

6  range associated with the Guidelines calculation contained in the plea agreement, unless Mr.

7  Erazo Ramos violated the agreement or failed to accept responsibility. Plea agreement at

8  ¶17. Paragraph 7 of the plea agreement allows Mr. Erazo Ramos "to seek a downward

9  variance based on the factors set forth in 18 U.S.C. § 3553(a)."

10  **III.    PRESENTENCE INVESTIGATION REPORT**

11       Mr. Erazo Ramos has no objections to the factual content of the PSR. It calculates his

12  adjusted offense level to be 21, which includes a two-level reduction for meeting the safety

13  criteria. The PSR also finds that Mr. Erazo Ramos has a Criminal History Category of I,

14  resulting in a Guidelines Range of 37 to 46 months. PSR at ¶ 75. According to the Judicial

15  Sentencing Information database, similarly-situated defendants are sentenced on average to

16  26 months of imprisonment. The median length of imprisonment imposed is 28 months. *Id*.

17  at ¶ 91. Based on the factors set forth in 18 U.S.C. § 3553(a), the PSR recommends that the

18  Court vary downward from the applicable Guidelines Range and impose a sentence of 30

19  months. PSR Sentencing Recommendation at 1. The PSR notes that Mr. Erazo Ramos "had

20  a difficult upbringing in Honduras" and "has never been sentenced to a period of

21  incarceration; therefore, any lengthy period of confinement would be a significant

22  punishment." *Id*. at 2. Mr. Erazo Ramos agrees that a downward variance is appropriate, but

23  recommends a greater variance, resulting in a custodial sentence of time served.

24

25

26

27       [1]Mr. Erazo Ramos' role was clarified in the safety valve debriefing and he is no longer
seeking a reduction for being a minor participant.

28

1   **IV.   MR. ERAZO RAMOS RESPECTFULLY REQUESTS THAT HE BE**
2       **SENTENCED TO TIME SERVED FOLLOWED BY FOUR YEARS OF**
        **SUPERVISED RELEASE WITH CONDITIONS SET BY THE COURT**

3           In *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008), the Ninth Circuit

4   explained that,

5           The overarching statutory charge for a district court is to "impose a sentence
            sufficient, but not greater than necessary" to reflect the seriousness of the
6           offense, promote respect for the law, and provide just punishment; to afford
            adequate deterrence; to protect the public; and to provide the defendant with
7           needed educational or vocational training, medical care, or other correctional
            treatment.  18 U.S.C. § 3553(a) and (a)(2).
8

9           All sentencing proceedings are begun by the district court calculating the applicable

10  guideline range. The district court then should consider the sentencing factors set forth in

11  section 3553(a) to determine if they support the sentence suggested by either of the parties.

12  *Carty*,  520 F.3d at 991. These factors include:

13          the nature and circumstances of the offense and the history and characteristics
            of the defendant; the need for the sentence imposed; the kinds of sentences
14          available; the kinds of sentence and the sentencing range established in the
            Guidelines; any pertinent policy statement issued by the Sentencing
15          Commission; the need to avoid unwarranted sentence disparities among
            defendants with similar records who have been found guilty of similar
16          conduct; and the need to provide restitution to any victims. 18 U.S.C. §
            3553(a)(1)-(7).
17

18  *Id*.

19          Here, as identified above and in the PSR, there are a myriad of sentencing factors that

20  support the sentence requested by Mr. Erazo Ramos.

21          **A.    Difficult Upbringing in Honduras**

22          Mr. Erazo Ramos was raised in extreme poverty. He and his family lived in a small,

23  one-bedroom home, without running water, electricity, and indoor plumbing. He often went

24  hungry, and when the family had food, it consisted only of beans and tortillas. Mr. Erazo

25  Ramos left school after the seventh grade so he could help support his family by working in

26  the fields.

27          Not only did Mr. Erazo Ramos have to cope with stress caused by poverty, he

28

ERAZO RAMOS SENTENCING MEMORANDUM, CASE NO. 21cr0415-002 CRB          5

1    experienced anxiety from threats to his physical safety. At home, his parents whipped him

2    with a belt several times a month. In addition, there was a significant amount of violence in

3    his small town. He frequently heard the sound of gunfire and felt very unsafe.

4              **B.    Difficult Adjustment in the United States**

5              Mr. Erazo Ramos did not come to the United States for the purpose of illegally selling

6    drugs.  He immigrated with the hope of finding legitimate employment that would allow him

7    to support both his family in Honduras and himself. Unfortunately, finding adequate

8    employment without having legal immigration status proved to be difficult. He obtained

9    work as a dishwasher in various restaurants, but the pay was too little. It seemed to Mr. Erazo

10   Ramos that the only viable way of earning enough money to support himself and his family

11   was through selling drugs, especially when engaging in this illegal conduct went unpunished

12   by the local criminal justice system.

13             **C.    Time Served is Substantial Punishment**

14             Although Mr. Erazo Ramos was previously arrested for selling drugs by the San

15   Francisco Police, only once were charges filed in superior court and that case was later

16   dismissed. An arrest in Oakland also resulted in a criminal case being filed, but Mr. Erazo

17   Ramos was released from the custody while the case remains pending. As a result, Mr. Erazo

18   Ramos has never been sentenced to a period of incarceration in the past or even spent

19   significant time in pretrial custody. As the PSR correctly observes, any lengthy period of

20   incarceration would be a significant punishment. To date, Mr. Erazo Ramos has spent almost

21   15 months incarcerated under difficult circumstances in Santa Rita Jail. This lengthy period

22   of incarceration clearly constitutes significant punishment for Mr. Erazo Ramos and is also

23   long enough to serve the purpose of general deterrence.

24             **D.    Likely Deportation to Honduras**

25             Because Mr. Erazo Ramos does not have legal status here he is likely to be deported

26   to Honduras upon being released from custody. While Mr. Erazo Ramos will be reunited with

27   his family, living in Honduras will be difficult. Honduras remains a very poor country with

28

ERAZO RAMOS SENTENCING MEMORANDUM, CASE NO. 21cr0415-002 CRB          6

1    few economic opportunities.  In 2019, 49 percent of Honduras residents lived on less than

2    U.S. $5.50 a day at 2011 international prices.[2] According to the World Bank:

> Honduras remains one of the poorest and most unequal countries in the Western Hemisphere. Prior to the twin shocks of 2020 [COVID-19 pandemic and two Category 4 hurricanes], 25.2 percent of the Honduran population lived in extreme poverty and almost half (4.4 million people) lived in poverty, based on the official poverty lines. Poverty had shown little decline since 2014, while extreme poverty increased in rural areas since 2014 and in urban areas since 2017. Rural inequality also rose sharply from a Gini index of 0.431 in 2014 to 0.486 in 2019. Overall, Honduras had in 2019 the fourth-highest level of income inequality (Gini index of 0.482) in the LAC [Latin American and Caribbean] region.[3]

9    Honduras is also still a country of great violence.  In 2022, Honduras had the fourth

10   highest murder rate of any country in the world, at 39.93 per 100,000 population.[4] As of

11   October 5, 2022, the United States State Department advised against travel to Honduras

12   because:

> Violent crime, such as homicide and armed robbery, is common. Violent gang activity, such as extortion, violent street crime, rape, and narcotics and human trafficking, is widespread. Local police and emergency services lack sufficient resources to respond effectively to serious crime.[5]

16   Given the difficulties of life in Honduras, deportation will pose significant additional

17   punishment on Mr. Erazo Ramos, beyond his incarceration.

18   **V.    CONCLUSION**

19   Due to the many mitigating circumstances outlined above and in the PSR, the Court

20   should sentence Mr. Erazo Ramos to time served, followed by four years of supervised

21   release with appropriate conditions.   A sentence of almost 15 months is significant

22   punishment, especially since Mr. Erazo Ramos has not previously served a term of

---

[2]*See* https://www.macrotrends.net/countries/HND/honduras/poverty-rate

[3]*See* https://www.worldbank.org/en/country/honduras/overview

[4]*See* https://worldpopulationreview.com/country-rankings/murder-rate-by-country

[5]*See* https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/honduras-travel-advisory.html

ERAZO RAMOS SENTENCING MEMORANDUM, CASE NO. 21cr0415-002 CRB          7

1  incarceration. In addition, no additional time in custody is needed to serve the interests of fair

2  punishment, rehabilitation, and deterrence.

3  DATED: December 28, 2022                    Respectfully submitted,

/s/ Mark Goldrosen
MARK GOLDROSEN
Attorney for Defendant
NEITAN ERAZO RAMOS